IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

HASBRO, INC. and            )
LARAMI LIMITED,             )    Civil Action
                            )    No. 02-MC-00231
        Petitioners         )
                            )
        vs.                 )
                            )
ALAN AMRON and              )
AMRON DEVELOPMENT, INC.,    )
                            )
        Respondents         )

                    *    *    *

APPEARANCES:

        GARY ALLEN ROSEN, ESQUIRE
            On behalf of Petitioners

        ARTHUR M. DRESNER, ESQUIRE
            On behalf of Respondents

                    *    *    *

                M E M O R A N D U M

JAMES KNOLL GARDNER,
United States District Judge

        This matter is before the court on the Petition to

Confirm Arbitration Award filed on behalf of petitioners Hasbro,

Inc., and Larami Limited on September 12, 2002 and the Motion to

Vacate the Arbitration Award filed on behalf of respondents Alan

Amron and Amron Development, Inc., September 30, 2002.[1]  By Order

---

[1]     On September 30, 2002 respondents filed a document entitled
Respondents' Opposition to Petition to Confirm Arbitration Award and Enter
Judgment Thereon and Respondents' Motion to Vacate Arbitration Award.  This
document serves as respondents' answer to the Petition to Confirm Arbitration

                        (Footnote 1 continued):

dated February 25, 2004 and filed February 27, 2004 we permitted additional briefing by the parties.[2]  After oral argument, and for the reasons expressed below, we grant in part and deny in part the petition to confirm the arbitration award.  Furthermore, we grant respondents' motion to vacate the arbitration award in part and deny it in part.

Specifically, we confirm the arbitration award in all respects except the award regarding the counterclaim for fraudulent conveyance.  We vacate the arbitrators' decision regarding the counterclaim of fraudulent conveyance because we conclude that that cause of action is barred by the statute of limitations.

JURISDICTION AND VENUE

Jurisdiction is based upon diversity of citizenship pursuant to 28 U.S.C. § 1332.  Venue is proper under 28 U.S.C. § 1391 because the parties submitted to jurisdiction by the

_____

(Continuation of footnote 1):

Award and as respondents' motion to vacate the arbitration award in this matter.  Petitioners' Answer to Respondents' Motion to Vacate Arbitration Award was filed October 11, 2002.  Respondents' Reply Brief in Support of Their Opposition to Petition to Confirm Arbitration Award and Their Motion to Vacate the Award was filed October 23, 2002.

[2]     By the February 25, 2004 Order of the undersigned we granted Respondents' Motion for Leave to File Supplemental Memorandum of Law in Opposition to Petition to Confirm Arbitration Award and in Support of Cross-Motion to Vacate Arbitration Award.  Respondents' Supplemental Memorandum of Law in Opposition to Petition to Confirm Arbitration Award and in Support of Cross-Motion to Vacate Arbitration Award was filed February 24, 2004. Petitioners' Supplemental Memorandum Pursuant to Order of February 25, 2004 was filed March 2, 2004.

American Arbitration Association ("AAA") and where the subject arbitration took place in this judicial district in Philadelphia, Pennsylvania.

<u>PROCEDURAL HISTORY AND FACTS</u>

Initially, we note that this matter has a long and tortured history of litigation and animosity between the parties and their predecessors.  For clarity of the decision, we have attempted to provide a condensed version of the procedural history.

Because of the nature of this matter, the procedural and factual history of this case are somewhat intertwined. Therefore, based upon the pleadings, exhibits, arbitration record and briefs of the parties, we outline the following relevant procedural history and pertinent facts.

Petitioner Hasbro, Inc. is a corporation organized under the laws of Rhode Island, with its principal place of business in Pawtucket, Rhode Island.  Petitioner Larami Limited is a corporation organized under the laws of Delaware, with its principal place of business in Pawtucket, Rhode Island.

Respondent Alan Amron is an individual residing in Syosset, New York.  Respondent Amron Development, Inc. is a corporation organized under the laws of New York with its principal place of business in Syosset, New York.

-3-

On June 24, 1994 Larami Corporation, predecessor-in-interest of petitioners, obtained a jury verdict against defendants Talk to Me Products, Inc. and Alan Amron for ten million dollars in a trial conducted by our colleague, then United States District Judge, now Senior District Judge, Lowell A. Reed, Jr.  The jury found that defendants had violated Section 43(a) of the Lanham Act[3], tortiously defamed and commercially disparaged Larami, as well as tortiously interfered with Larami's contractual relations.  Judgment was entered after the trial.

After entry of the $10,000,000 judgment, Larami Corporation conducted discovery in aid of execution.  In response to that discovery, Mr. Amron disclosed that he and his wife, Eileen Amron, had formed a Florida corporation called Alan Amron Development, Inc.  Larami Corporation believed that Alan Amron Development, Inc. was an alter ego of Mr. Amron and was being used for the purpose of shielding his assets from creditors. Larami Corporation, by its successor-in-interest Star Creations Investment Company, brought suit against Alan Amron Development, Inc. seeking to void as, fraudulent conveyances, certain transactions between Mr. Amron and Alan Amron Development, Inc.

On August 18, 1995, Judge Reed granted Star Creations a preliminary injunction against Alan Amron Development, Inc.  The

---

[3]     15 U.S.C. §§ 1051 through 1127.

injunction prevented Alan Amron Development, Inc. from disposing of its property in an effort to avoid having sufficient assets to satisfy the judgment against Mr. Amron.

On August 30, 1995 Alan Amron Development, Inc. and Alan Amron, individually, filed for Chapter 11 bankruptcy protection.  Star Creations subsequently filed a motion in the United States Bankruptcy Court for the Eastern District of New York seeking to have its judgment declared non-dischargeable. Star Creations' motion was subsequently granted.  However, the Bankruptcy Court denied Star Creations' alternate motions for appointment of an operating trustee or conversion of the Alan Amron Development, Inc. and Alan Amron Chapter 11 bankruptcy cases to Chapter 7 cases.

In September 1997, the parties entered into a Settlement Agreement which resolved the pending bankruptcy proceedings and a number of other pending lawsuits and disputes, as well.

Paragraph 41(a) of the Settlement Agreement provides that for a period of 10 years, Alan Amron and any companies controlled by him will not commence any litigation against the petitioners in this case, but will agree to submit such claims to binding arbitration before the American Arbitration Association in Philadelphia, Pennsylvania.

Moreover, paragraph 19 of the Settlement Agreement provides that "[e]ach of the Parties consents and submits to the jurisdiction of the American Arbitration Association in Philadelphia, PA with respect to resolution of those disputes which arise under paragraph 14 herein, as well as disputes with respect to interpretation of this agreement."

In July 1995 the Amrons formed a New York corporation named Amron Development, Inc.  The existence of this corporation was not disclosed to petitioners until sometime in 1999 and was never disclosed to the bankruptcy court.  One of the assets transferred to Amron Development, Inc. was a patent application which forms the underlying basis of the current dispute.

In August 1999 Amron Development, Inc. filed a demand for arbitration relating to United States Patent No. 5,915,771 ("771 patent").  After hearing, the arbitration panel ruled in favor of Hasbro and Larami and against Amron Development, Inc. Thereafter, in February 2000 Amron Development, Inc. filed amended claims on the 771 patent which led to the issuance of a second patent, United States Patent No. 6,234,347 ("347 patent").

On November 27, 2001 Alan Amron, filed a pro se Complaint in the United States District Court for the Eastern District of New York in case number 01-CV-7830 seeking various types of declaratory judgment relief.  Specifically, Mr. Amron sought:  (1) an Order precluding petitioners from asserting any

-6-

claims in the future for events that occurred prior to the 1997 Settlement Agreement; (2) a ruling that any allegations of fraud made by petitioners against Mr. Amron or the Amron corporations were without merit; (3) a determination that petitioners have no claim for unclean hands based upon any conduct occurring prior to the Settlement Agreement; and (4) an Order estopping petitioners from raising any fraud claims based upon the settlement negotiations.[4]

In the Jurisdiction and Venue portion of his Complaint, Mr. Amron asserts that his lawsuit was related to the validity of the agreement to arbitrate. Throughout the Complaint he alleges the invalidity of petitioners' defense of unclean hands and avers how this defense has been allegedly utilized by petitioners in the past.

On November 29, 2001 Amron Development, Inc. filed a Demand for Arbitration, claiming that petitioners were infringing on a patent issued to Amron Development, Inc. for a "pressurized toy water gun with selective pressurization" based upon the 347 patent. The Demand for Arbitration requested the arbitrators to stop the infringement and to award Amron Development back royalties.

---

[4]       See the prayer for relief contained in the Complaint filed in the United States District Court for the Eastern District of New York attached as Exhibit F to the Appendix of Exhibits to Respondents' Supplemental Memorandum of Law in Opposition to Petition to Confirm Arbitration Award and in Support of Cross-Motion to Vacate Arbitration Award, which Appendix was filed February 21, 2004.

On December 19, 2001 petitioners filed a pleading styled Counterclaim/Additional Claim to Amron's Demand for Arbitration.  The pleading alleged counterclaims for fraudulent conveyances, common law fraud, civil conspiracy to commit fraud, breach of contract and breach of the duty of good faith and fair dealing.  Furthermore, petitioners sought avoidance of the fraudulent conveyances, reformation of the August 19, 1997 Settlement Agreement, compensatory damages, punitive damages and legal fees and costs.  Finally, petitioners raised the defense of unclean hands to the allegation of willful patent infringement.

Prior to commencement of the arbitration, Mr. Amron requested the arbitrators to stay commencement of the arbitration until the District Court in New York ruled on the pending Complaint.  The arbitrators declined to stay the proceedings[5], but advised respondents that they would abide by any decision of the federal court if one was issued during the pendency of the arbitration proceedings.  In addition, by letter dated January 11, 2002 Mr. Amron requested a stay of the arbitration in the declaratory judgment action pending in the United States District Court for the Eastern District of New York.

_____

[5]     The request to stay was denied by letter dated January 7, 2002 from Florence M. Anderson, Case Manager for the American Arbitration Association.  Exhibit I to the Appendix of Exhibits to Respondents' Supplemental Memorandum of Law in Opposition to Petition to Confirm Arbitration Award and in Support of Cross-Motion to Vacate Arbitration Award. The second request was denied on the record at the commencement of the arbitration hearings on June 24, 2001.

-8-

On June 26, 2002 Mr. Amron filed a Notice of Voluntary Dismissal Without Prejudice in the pending declaratory judgment action in the Eastern District of New York.

On September 10, 2002 the Award of Arbitrators was issued finding in favor of petitioners and against respondents. Specifically, the Award provides:

> 1.  We find in favor of RESPONDENTS and against CLAIMANTS as a result of unclean hands in that CLAIMANT ALAN AMRON engaged in inequitable conduct in failing to disclose as required the existence of CLAIMANT AMRON DEVELOPMENT, INC. and all assets assigned to it.
>
> 2.  We find in favor of RESPONDENTS and against CLAIMANTS on RESPONDENTS' counterclaim of common law fraud, in that CLAIMANT ALAN AMRON fraudulently concealed the creation of CLAIMANT AMRON DEVELOPMENT INC., a corporation with a confusingly similar name to ALAN AMRON DEVELOPMENT, INC.
>
> 3.  We find in favor of RESPONDENTS and against CLAIMANT ALAN AMRON on the counterclaim of breach of contract, in that ALAN AMRON filed a certain declaratory judgment action in U.S. District Court, Eastern District of New York (No. 01-7830) in breach of paragraph 14(a) of the August 9, 1997 settlement agreement.
>
> 4.  We find in favor of RESPONDENTS and against CLAIMANTS on the counterclaim of fraudulent conveyance with respect to a patent application for U.S. Patent No. 6,234,347.
>
> 5.  Therefore, all claims by CLAIMANTS against RESPONDENTS for infringement of U.S. Patent No. 6,234,347 are DENIED.

6.  CLAIMANTS, his or its successors and/or
assigns are barred from enforcing U.S. Patent
No. 6,234,347 against RESPONDENTS.

7.  CLAIMANT ALAN AMRON shall pay to
RESPONDENTS the sum of Forty Four Thousand
Three Hundred Forty Three Dollars and Thirty-
Seven cents.  ($44,343.37) as RESPONDENTS'
legal fees and costs in the declaratory
judgment action filed by CLAIMANT ALAN AMRON
in the U.S. District Court, Eastern District
of New York (No. 01-7830).  Such sum shall be
paid within 30 days of the date of this
AWARD.

8.  Each party shall bear responsibility for
his or its own attorney fees and costs.

The administrative fees and expenses of the
American Arbitration Association totaling
$8,300.00 and the compensation and expenses
of the arbitrators totaling $15,938.00 shall
be borne equally by the parties and have been
paid.

This Award is in full settlement of all
claims and counterclaims submitted to this
Arbitration.  All claims not expressly
granted herein are hereby, denied.

On September 13, 2002 petitioners filed the within

petition to confirm the arbitration award.  On September 30,

2002 respondents' motion to vacate the arbitration award was

filed.


STANDARD OF REVIEW

Review of an arbitration award is narrowly

circumscribed by Section 10 of the Federal Arbitration Act

-10-

("Act").[6]   Section 10(a) and (b) lists five circumstances under which the court may vacate an arbitration award:

>           (a)(1) where the award was procured by corruption, fraud or undue means;
>
>           (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
>           (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
>           (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.
>
>           (b) If an award is vacated and the time within which the agreement required the award to be made has not expired, the court may, in its discretion, direct a rehearing by the arbitrators.

9 U.S.C. § 10(a) and (b).

In addition, "there exists a judicially created ground for vacating the arbitration award.  The Supreme Court has stated that arbitration awards can be vacated if they are in 'manifest disregard of the law.'" Mathers v. Sherwin Williams Company, Inc., No. Civ.A. 97-5138, 2000 WL 311030 at *6 (E.D.Pa. Mar. 27, 2000)(Broderick, S.J.), (quoting First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 942, 115 S.Ct. 1920, 1927,

_____

[6]        9 U.S.C. §§ 1-16.

-11-

131 L.Ed.2d 985, 992 (1995)).

## DISCUSSION

Petitioners contend that taking into account all the evidence before the arbitrators and the applicable standard of review, the arbitrators' ruling was correct and should be confirmed.

On the other hand, respondents contend that the arbitration award should be vacated because the arbitration panel: (1) exceeded its jurisdiction by usurping the authority of the federal courts to decide the issue of the arbitrability of petitioners' fraud based claims; (2) engaged in misconduct by refusing to postpone the arbitration hearing pending a ruling by the United States District Court for the Eastern District of New York on the Complaint for declaratory judgment; and (3) manifestly disregarded the law by, among other things, sanctioning respondents for asking the federal courts to decide the arbitrability of petitioners' claims (which respondents' contend is what the law requires), granting petitioners relief on petitioners' claim for fraudulent conveyance (which claim is allegedly time-barred), and declaring respondents' patent unenforceable against petitioners for all time (on grounds allegedly never recognized by any court).

We address these issues below.

-12-

Authority to Arbitrate

Initially, respondents contend that the arbitration panel usurped that authority of the federal courts and engaged in misconduct within the meaning of 9 U.S.C. § 10 by deciding the scope of its own jurisdiction.  Respondents assert that there is no clear and unmistakable evidence that respondents intended to delegate this power to the arbitrators.

Respondents rely on the decisions of the United States Supreme Court in First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 942, 115 S.Ct. 1920, 1927, 131 L.Ed.2d 985, 992 (1995) and AT&T Technologies, Inc. v. Communication Workers of America, 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) for the proposition that in the absence of a clear intent by the parties to delegate the issue of arbitrability to the arbitration panel, it is for the federal courts to decide the issue of arbitrability.

In this case, respondents contend that the Settlement Agreement is not clear on this issue, so it is for the court to decide arbitrability.  Thus, respondents contend that the decision of the arbitration panel should be vacated for this reason alone.

Petitioners contend that in the 1997 Settlement Agreement the parties expressly agreed that any claims against them by respondents and any issues involving water guns would be

-13-

resolved in arbitration conducted by the American Arbitration Association ("AAA").  The underlying arbitration was commenced by respondent Alan Amron and Amron Development, Inc. claiming infringement of a patent for a "Pressurized Water Gun with Selective Pressurization" pursuant to paragraphs 14(a) and 19 of the Settlement Agreement.

Petitioners assert that they filed counterclaims which arose out of the allegation by them that at the time of the 1997 Settlement Agreement (which resolved the ten million dollar judgment against Alan Amron and allowed him to emerge from bankruptcy) Alan Amron concealed from petitioners the existence of Amron Development Inc., and concealed an application for patent (the 717 patent) which matured into the patent-in-suit (the 347 patent).

Petitioners further contend that prior to commencement of arbitration, and with the consent of respondents, there was a reverse bifurcation of the issues at the arbitration. Specifically, the arbitration was to proceed first the counterclaims, after which the matter was to be heard on respondents' patent claim.

Petitioners aver that because the parties expressly agreed to the arbitration, and in the absence of a specific agreement to the contrary, the parties were deemed to incorporate the rules of the American Arbitration Association as they existed

-14-

at the time of the arbitration.  Rule 8 of these rules provides
that arbitrators "shall have the power to rule on...jurisdiction,
including any objections with respect to the existence, scope or
validity of the arbitration agreement."  American Arbitration
Association Rules and Procedures, Commercial Arbitration Rules,
as amended, effective September 1, 2000, Rule 8.

Petitioners rely on the decision of the United States
District Court for the Southern District of Florida in Brandon,
Jones, Sandall, Zeide, Kohn, Chalal & Musso v. MedPartners, Inc.,
203 F.R.D. 677, 683-685 (S.D.Fla. 2001)(Middlebrooks, J.) for the
proposition that when the parties agree that the American
Arbitration Association will arbitrate, but the agreement is
silent on the issue of how that will be accomplished, then Rule 1
of the AAA's Commercial Arbitration Rules provides that the
parties shall be deemed to have made the AAA's Rules a part of
their arbitration agreement whenever the parties have provided
for arbitration by the AAA.  As noted above, Rule 8 of the AAA's
Rules provide that arbitrators "shall have the power to rule
on...jurisdiction, including any objections with respect to the
existence, scope or validity of the arbitration agreement."

Moreover, petitioners contend that the parties agreed
in paragraph 19 of the Settlement Agreement that disputes with
respect to the interpretation of the contract would be submitted
to arbitration.  Petitioners assert that the issue of

-15-

jurisdiction to arbitrate is an issue of contract interpretation, and therefore an issue that the parties agreed to submit to the arbitrators.

Finally, relying on the decision of the United States Court of Appeals in <u>GK MGT Inc. v. Local 274</u>, 930 F.2d 301, 304 (3d Cir 1991) petitioners contend that the arbitrators' exercise of jurisdiction must be given the same deference as their rulings on the merits, and may only be overturned for manifest disregard for the law.  Petitioners assert that the arbitrators correctly determined jurisdiction because the resolution of the dispute on the issues raised in their counterclaims were an integral part of the "dispute" which respondents brought to arbitration of alleged patent infringement.  Petitioners further contend that the counterclaims were arbitrable because they were part of the dispute over the enforceability of the patent.

For the following reasons, we conclude that the arbitration panel did not err in determining the scope of its jurisdiction in the arbitration.

We agree generally with respondents that in the absence of a clear intent by the parties to delegate the issue of arbitrability to the arbitration panel, it is for the federal courts to decide the issue of arbitrability.  <u>First Options</u>, <u>supra</u>.  Furthermore, we agree that the AAA Rules could not be an express part of the agreement of the parties, especially Rule 8

which provides that the arbitrators have the power to rule on jurisdiction, because those rules were not in effect at the time the Settlement Agreement was executed.  Therefore, those rules could not be known by the parties to be part of the Settlement Agreement.  However, we conclude that the arbitrators did not commit a manifest disregard for the law in this matter.

A review of the declaratory judgment Complaint filed by Mr. Amron in the United States District Court for the Eastern District of New York reveals that what Mr. Amron sought was not a determination of the arbitrability of respondents' counterclaims. Rather, what he sought was a declaratory judgment declaring that (1) defendants are precluded from asserting any claims against petitioners for things that did or did not occur before execution of the Settlement Agreement in 1997; (2) any allegations of fraud by respondents are without merit;  and (3) because petitioners had not raised certain claims of fraud when the issues first became known to them during the 1999 arbitration, respondents should now be estopped from raising those claims.

We conclude that Mr. Amron did not seek a determination from a federal court whether certain issues were arbitrable or not.  Rather, what Mr. Amron sought was a judicial determination, on the merits, that he committed no fraudulent acts.  Moreover, Mr. Amron withdrew his federal action after the panel commenced the arbitration, but before a determination by the court on his

-17-

declaratory judgment action.  This withdrawal constituted a waiver of the matter because, even though the arbitrators began the arbitration proceedings, there was sufficient time between commencement of the arbitration in June 2002 and the arbitration award in September 2002 for the federal court to rule on Mr. Amron's action.  If the federal court had ruled in Mr. Amron's favor, the arbitrators would have been bound by that decision.

Furthermore, upon de novo consideration of the issue of arbitrability, we conclude that the arbitrators correctly determined that jurisdiction was properly before the panel.  This is because the resolution of the dispute on the issues raised in the counterclaims was an integral part of the "dispute" of alleged patent infringement which respondents brought to arbitration.  Moreover, the counterclaims were arbitrable because they were part of the dispute over the enforceability of the patent.

Accordingly, because we conclude that respondents never sought a judicial determination regarding the arbitrability of any issue, because we determine that respondents waived any contest on this issue by voluntarily withdrawing their federal action and because we find that petitioners' counterclaims were arbitrable, we conclude that the arbitrators did not commit a manifest disregard of the law on this issue.

-18-

<u>Denial of Request for Stay of Proceedings</u>

Respondents assert that the arbitrators engaged in misconduct by failing to postpone the arbitration hearing upon sufficient cause shown while the District Court in the Eastern District of New York decided the issue of arbitrability.

Courts may vacate an arbitration award "where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown...."  9 U.S.C. § 10(a)(3). The United States Court of Appeals for the Third Circuit has defined "misconduct" under 9 U.S.C. § 10(a)(3) as conduct "which so affects the rights of a party that it may be said that he was deprived of a fair hearing."  <u>Newark Sterotypers' Union v. Newark Morning Ledger Company</u>, 397 F.2d 594, 599 (3d Cir. 1968).

In this case, respondents have not attempted to articulate how their rights were so affected as to deprive them of a fair hearing.  Rather, respondents simply state that it was error to deny the request to stay the arbitration until the federal court in New York ruled on the declaratory judgment action.  We disagree.

As noted above, Mr. Amron's declaratory judgment action did not actually seek a determination of whether any issues were arbitrable.  Rather, he sought declarations that he had done nothing wrong.  Moreover, because after de novo review we have concluded that the arbitrators correctly determined the scope of

-19-

their jurisdiction to hear petitioners' counterclaims, we conclude that respondents were not in any way deprived of a fair hearing.

Accordingly, we conclude that the arbitrators were not guilty of misconduct in denying respondents' request to stay the arbitration.

<u>Fraudulent Conveyance</u>

Respondents contend that the arbitrators erred in granting relief on the petitioners' counterclaim for fraudulent conveyance because the matter was time-barred.  Respondents assert that New York C.P.L.R. § 202 (New York's borrowing statute) provides that New York defendants (for purposes of petitioners' counterclaims), such as Alan Amron and Amron Development, Inc., are entitled to the benefit of the shorter of the New York statute of limitations or the statute of limitations in the state where petitioner resides.

In this case, petitioner Larami Limited, the party whom respondents claim is infringing on its patent, resides in the State of Delaware which has a one-year statute of limitations on a cause of action for fraudulent conveyance.  Respondents contend that petitioners knew as early as May 18, 1999 about the patent application on the 771 patent but did not raise the counterclaims until December 19, 2001.

Thus, respondents contend that because petitioners knew about the alleged fraudulent conveyances for more than one year before raising the issue as a counterclaim in the arbitration proceeding, the arbitrators should have found the fraud-based counterclaims to be time-barred by the statute of limitations.

Petitioners aver that their counterclaims are not time-barred because under New York C.P.L.R § 203(d) a counterclaim is not time-barred, regardless of the statute of limitations, if it arose from the transactions, occurrences or a series of transactions or occurrences upon which the claim asserted depends.  Thus, petitioners argue that because Mr. Amron fraudulently concealed the existence of the second corporation and concealed the existence of the patent application on the 771 patent transferred to this entity, respondents waived the right to assert that counterclaims based upon the fraudulent concealment are time-barred.

For the following reasons we agree with respondents, disagree with petitioners and conclude that the arbitrators exercised a manifest disregard for the law in finding for petitioners on their counterclaim for fraudulent conveyances.

The parties do not dispute the residence of either petitioner Larami Limited or respondents.  Moreover, the parties do not dispute the application of New York law.  Accordingly, we apply New York law to this matter.

-21-

In applying New York law, the first step is to determine the effect of New York's "borrowing statute".  Section 202 of the New York Civil Practice Law and Rules provides:

> An action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or place without the state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply.

N.Y.C.P.L.R. § 202.

Courts have generally interpreted the place of injury in fraud actions as the residence of the injured party.  <u>Bache Halsey Stuart Inc. v. Namm</u>, 446 F.Supp. 692, 697 (S.D.N.Y. 1978). Because Larami Limited is a Delaware corporation, we must apply Delaware law under the New York borrowing statute if it is shorter than the New York period.  Furthermore, pursuant to the New York borrowing statute, we must apply the entire body of limitations law of the foreign jurisdiction where a cause of action accrues in favor of a New York non-resident.  <u>Namm</u>, <u>supra</u>.

Under Delaware law, a cause of action with respect to a fraudulent transfer or conveyance is extinguished unless an action is brought within four years after the transfer is made or, if later, within one year after the transfer is or could reasonably have been discovered.  Furthermore, concealment of a fraudulent conveyance, not reasonably discoverable, tolls

-22-

operation of the statute.  See In re: Kelly, 289 Bankr. 38

(Bankr. D.Del. 2003); 6 Del. C. § 1309.  In addition, a

counterclaim is an action for statute of limitations purposes.

B. Lewis Productions, Inc. v. Bean, No. Civ.A. 02-93,

2005 U.S. Dist. LEXIS 1549 at *6. (D.Del. 2005)(Jordan, J.).

      Section 203(6)(d) of the New York Civil Practice Law

and Rules provides:

> (d) Defense or counterclaim.  A defense or
> counterclaim is interposed when a pleading
> containing it is served.  A defense or
> counterclaim is not barred if it was not
> barred at the time the claims asserted in the
> complaint were interposed, except that if the
> defense or counterclaim arose upon
> transactions, occurrences, or series of
> transactions or occurrences, upon which a
> claim asserted in the complaint depends, it
> is not barred to the extent of the demand in
> the complaint notwithstanding that it was
> barred at the time the claims asserted in the
> complaint were interposed.

N.Y.C.P.L.R. § 203(6)(d).

      In applying statutes of limitations to this matter, it

is clear that Delaware has a four-year statute of limitations

with a one year discovery rule and that a counterclaim is subject

to the statute of limitations.  New York has no statute of

limitations for a counterclaim when the counterclaim arises from

the same transaction, occurrence or series of transactions or

occurrences.

      By relying on § 203(6)(d) respondents essentially

concede that their counterclaim for fraudulent conveyance arises

from the transactions, occurrences of series of them upon which respondents' claim for patent infringement depends.  Thus, because New York has no statute of limitations on counterclaims of this type and because Delaware has a defined statute of limitations, we conclude that we must apply Delaware law to this matter.

In applying Delaware law to the facts of this matter, it reveals that petitioners would have either four years from the fraudulent conveyance of the 771 patent application from Alan Amron Development, Inc. to Amron Development, Inc, which transfer occurred in July 10, 1995.  Thus, petitioners would have until July 10, 1999 to file any counterclaim for fraudulent conveyance. However, petitioners contend that they did not discover the fraudulent conveyance until May 18, 1999.  Hence, applying the one-year discovery rule, petitioners would have until May 18, 2000 to file their counterclaim.

In this case, petitioners' counterclaim with the AAA is dated December 19, 2001, some 19 months after the expiration of the statute of limitations.

A manifest disregard for the law contemplates more than an error of fact or law.  Rather, it is reserved for situations where an arbitrator recognizes a clearly governing legal principle and then proceeds to ignore it.  Smith v. PSI Services

-24-

II, Inc., No. Civ.A. 97-6749, 2001 WL 41122  (E.D.Pa. Jan. 12,
2001) (Waldman, J.).

        The parties do not dispute that the issue of the
statute of limitations on petitioners' counterclaim was fully
presented to the arbitrators.  We conclude that failure to
properly apply the statute of limitations in this matter rises
beyond a simple error of law to a manifest disregard of the law
because if petitioners' counterclaim were barred by the statute
of limitations, it had no cause of action.  For the arbitrators
to rule in favor of petitioners on a cause of action that was
barred rises to the level necessary to vacate that decision
notwithstanding the extreme deference we must give to the
arbitrators' decision.

        Accordingly, because we find a manifest disregard of
the law as it relates to the counterclaim for fraudulent
conveyance, we vacate that portion of the decision which finds in
favor of petitioners and against respondents on the counterclaim
for fraudulent conveyance.

Breach of Contract

        Respondents allege that the arbitrators erred when they
held that it was a breach of the Settlement Agreement for Mr.
Amron to seek declaratory relief from the federal courts.
Specifically, respondents contend that Mr. Amron had every right
to seek a decision from the federal courts on the arbitrability

-25-

of certain issues in this case which are not related to water guns.

More specifically, respondents aver that the declaratory judgment action did not bring a "claim" in a monetary sense.  Rather, what Mr. Amron sought was a determination of where the authority to determine certain issues was vested (i.e. with the arbitrators or with the federal courts).  For the following reasons we disagree with respondents and confirm this part of the arbitration award.

Paragraph 14 (a) of the Settlement Agreement between the parties provides:

> For a period of ten years, Amron and any companies controlled by him or for which he serves as an officer will not commence any litigation against Myung Song, Alvin Davis, Star Creations, Larami Limited or Hasbro, but will agree to bring any claim against any of the foregoing to binding arbitration before the American Arbitration Association in Philadelphia.  Amron further agrees that during this period he will not publicize any dispute with or claim against any of the foregoing.  Notwithstanding the foregoing, disputes involving Hasbro, its affiliates, subsidiaries or related companies (except Larami, Ltd.) Shall be referred to arbitration if the same involves water guns.

In this case, the arbitrators concluded that Mr. Amron breached this provision of the Settlement Agreement by filing his declaratory judgment action in United States District Court for the Eastern District of New York.

As noted above, we conclude that Mr. Amron's

-26-

declaratory judgment action sought a determination on the merits
that he had not committed fraud and that petitioners should be
collaterally estopped from raising certain issues in the future.
The language of the Settlement Agreement is very clear that Mr.
Amron and "any companies controlled by him...will not commence
any litigation against Myung Song, Alvin Davis, Star Creations,
Larami Limited or Hasbro, but will agree to bring any claim
against any of the foregoing to binding arbitration before the
American Arbitration Association in Philadelphia."

     The declaratory judgment action named all of those
entities, among others, as defendants.  Thus, it is clear that by
filing the declaratory judgment action in federal court in New
York, respondents commenced litigation against petitioners in a
forum other than the AAA in Philadelphia, Pennsylvania.

     Accordingly, applying the standard of review in this
matter, we conclude that it was not a manifest disregard of the
law for the arbitrators to conclude that respondents breached
this provision of the contract.  Hence, we confirm this portion
of the arbitration award.

### Unclean Hands

     Respondents contend that the arbitrators manifestly
disregarded the law by rendering the patent at issue
unenforceable against petitioners because of respondents' unclean
hands (by finding that the existence of the patent application

and the additional corporate entity was concealed in a different litigation).  Respondents aver that no court has ever granted such extraordinary relief absent misconduct before the patent office or in the specific litigation.

Petitioners contend that unclean hands is a recognized equitable defense to an action for patent infringement. Petitioners rely on the decision in Ott v. Goodpasture, Inc., 40 U.S.P.Q.2d 1831 (N.D. Tex. 1996) for the principle that the doctrine of unclean hands may be applied to prevent a patentee who has concealed the existence of a patent in bankruptcy proceedings from later enforcing it in an infringement proceeding.  For the following reasons, we conclude that the arbitrators did not commit a manifest disregard of the law in applying the doctrine of unclean hands to respondents' claim for patent infringement or declaring the patent at issue to be unenforcable against petitioners.

Unclean hands is a recognized equitable defense to an action for patent infringement.  Mylan Pharmaceuticals v. Thompson, 268 F.3d 1323, 1331 (Fed. Cir. 2001).  To prove the defense of unclean hands, petitioners must show that respondents conducted themselves in such a manner so as to shock the moral sensibilities of the trier of fact.  See Gaudiosi v. Mellon, 269 F.2d 873, 882 (3d Cir. 1959).  Stated differently, respondents' conduct must be "offensive to the dictates of

-28-

natural justice." <u>Aptix Corporation v. Quickturn Design Systems,</u>
<u>Inc.</u>, 269 F.3d 1369, 1375 (Fed. Cir. 2001).

> "One who comes in equity must come with clean hands and
keep those hands clean throughout the pendency of the litigation
even to the time of ultimate disposition by an appellate court."
<u>Gaudiosi</u>, 269 F.2d at 881.

> A fundamental principal upon which
> equity jurisprudence is found is that before
> a complainant has standing in court, he must
> not only show a good and meritorious cause of
> action, but also must come into court with
> clean hands.... Everything that enables a
> full and fair determination of the matters in
> controversy should be placed before the
> court.  The governing principle is that if a
> party, who sets the judicial machinery in
> motion to obtain a remedy, violates
> conscience, good faith or any other equitable
> principal 'then the doors of the court will
> be shut' and the court will refuse to
> acknowledge his right to any remedy.  The
> clean hands maxim gives broad discretion to
> the court's equity power in refusing to aid
> an unclean hands litigant.  It is not related
> to the liabilities or claims of the parties,
> nor fettered by the absence of actual
> damages.  The court is not bound by any
> formula, restraint or limitation which
> restricts the free and just exercise of its
> equitable discretion.  Any willful act, which
> can be rightfully said to transgress
> equitable standards, is sufficient....
> The unclean hands doctrine provides a defense
> to an otherwise valid legal claim when a
> plaintiff has engaged in 'unconscionable'
> conduct that 'has an immediate and necessary
> relation to the equity that [the claimant]
> seeks in respect of the matter in
> litigation.'

<u>Honeywell International, Inc. v. Universal Avionics Systems</u>

Corp., 343 F.Supp.2d 272, 321 (D.Del. 2004)(Citations omitted.)

        Based upon the record before the court, we conclude
that the arbitrators did not commit a manifest disregard of the
law in determining that respondents came to the arbitration with
unclean hands by failing to disclose the existence of the patent
application for the 771 patent and the existence of Amron
Development, Inc. during the pendency of the bankruptcy
proceedings and the settlement negotiations.

        Respondents further contend that their 347 patent is a
presumptively valid grant of personal property and is therefore
enforceable even in light of any alleged concealment of the
patent application and a corporate entity in an earlier,
unrelated proceeding.  Respondents rely on the decision of the
United States Court of Appeals for the Federal Circuit in Aptix,
supra, for the proposition that the arbitrators exceeded any
known authority by declaring the 347 patent unenforceable against
petitioners.  We disagree.

        In Aptix the Court of Appeals for the Federal Circuit
overturned that portion of the District Court's decision
rendering the patent in that matter unenforceable.  However, a
review of the underlying District Court decision[7] reveals that
the error by the District Court was the total invalidation of the
patent against the entire world rather than simply against the

_____

        [7]    Aptix Corporation v. Quickturn Design Systems, Inc., No. Civ.A.
C98-00762, 2000 U.S. Dist. LEXIS 8408 (N.D.Cal. 2000).

-30-

parties involved in the case.

In this case, the arbitrators found the 347 patent unenforceable only against petitioners.  The arbitrators did not rule that the 347 patent was unenforceable against the entire world.  Thus, respondents intellectual property right in the 347 patent is still enforceable against any person or entity except petitioners.  We conclude that this factual distinction takes this matter outside the holding of the Federal Circuit in <u>Aptix</u>.

Moreover, we note that the Settlement Agreement between the parties involved respondents giving up the right to seek enforcement of certain patents and trademarks involving water guns in exchange for a drastic reduction in the rights petitioners held in the $10,000,000 judgment against Mr. Amron.

We further conclude that if the patent application for the 771 patent had been disclosed it would have been included in the Settlement Agreement.  The 771 patent is the parent of the 347 patent.  Thus, it would also have been included in the Settlement agreement if disclosed.

Because we conclude that the decision of the arbitrators to bar enforceability of the 347 patent by respondents against petitioners is consistent with the terms and spirit of the underlying Settlement Agreement, we conclude the arbitrators' decision does not constitute a manifest disregard of the law.

Accordingly, we grant the petition to confirm the arbitrators' award and deny the motion to vacate it on this issue.

CONCLUSION

For all the foregoing reasons, we confirm in part and vacate in part the arbitration award in this matter. Specifically, we vacate that portion of the award which finds in favor of petitioners and against respondents on petitioners' counterclaim for fraudulent conveyance.  In all other respects we confirm the award and enter judgment in favor of petitioners consistent with the award.